# United States District Court, Northern District of Illinois

Minute Order Form (06/97)

(10)

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4849 | **DATE** | 7/11/2001 |
| **CASE TITLE** | Preferred Management Installations vs. L.F.D. Holding Company etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. We grant Knight's motion to intervene to enforce its lien interest and order that $118,702.28 of the judgment entered against LFD in this matter be transferred to Knight in satisfaction of the obligation owed to Knight by PMI.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail A 450 form.
Copy to judge/magistrate judge.

courtroom deputy's initials: WAH

FILED FOR DOCKETING
01 JUL 11 PM 2: 39

JUL 12 2001 date docketed

Document Number: 43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PREFERRED MANAGEMENT | ) |
| INSTALLATIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 99 C 4849 |
| | ) |
| L.F.D. HOLDING COMPANY d/b/a | ) |
| LONDON FARM DAIRY, INC., | ) |
| | ) |
| Defendant. | ) |

DOCKETED
JUL 1 2 2001

## MEMORANDUM OPINION AND ORDER

Lester B. Knight & Associates, Inc. ("Knight") seeks to intervene in this lawsuit to enforce a lien against plaintiff Preferred Management Installations, Inc. ("PMI"). Knight claims that it is owed money on a judgment entered against PMI in state court several years ago. Now that PMI is due to receive damages from L.F.D. Holding Company ("LFD") in this action, Knight seeks to enforce its lien and recover the debt. For the reasons set forth below, we grant Knight's motion to intervene and enforce its lien interest.

## BACKGROUND

In February 1995, the Circuit Court of Cook County entered a judgment in favor of Knight and against a company called Petefish Management, Inc. ("Petefish") in the amount of $75,424.76 plus 9 per cent interest until satisfaction of judgment (Knight's Mot. Exh. A). Knight thereafter initiated citation proceedings against Petefish in an attempt to collect the judgment. During the course of those proceedings Knight learned that Petefish was also doing business as PMI. Knight explained this to the Circuit Court and obtained an order finding PMI liable for the judgment previously entered against Petefish (Knight's Mot. Exh. C). Knight then embarked on an attempt to locate the assets of PMI. Knight conducted

depositions and served discovery requests on the company but was unable to uncover much until it learned, in January 2001, that PMI was pursuing a breach of contract claim against LFD in this court. Hopeful that its perseverence might soon be rewarded, Knight served LFD with a citation to discover assets on January 16, 2001, thereby placing a lien on any recovery PMI received from LFD (Knight's Mot. Exh. D).

PMI's lawsuit against LFD went to trial in February 2001. On April 5, 2001, we found for PMI and entered a judgment against LFD in the amount of $130,695. Knight now asks us to enforce its lien by awarding it a portion of the LFD judgment. Specifically, Knight states that its 1995 state court judgment is worth approximately $118,000 today.[1] Knight claims that it holds a perfected lien for that amount and requests that we enforce the lien by transferring that sum of the LFD judgment to Knight. PMI disagrees, arguing that the LFD judgment should be paid out first to PMI's attorneys and then to three independent consultants who had been hired by PMI to work on the LFD project. PMI says that Knight is, at best, third in line to the LFD judgment proceeds and thus should take only what is left after the attorneys and consultants have been paid.

## DISCUSSION

As described above, PMI owes Knight approximately $118,000. Knight claims that it is entitled to recover PMI's debt directly from the LFD judgment based on a perfected lien it acquired by serving a citation to discover assets on LFD on January 16, 2001. *See* 735 ILCS 5/2-1402; Cacok v. Covington, 111 F.3d 52, 53-54 (7th Cir. 1997) (under Illinois law, judgment creditor obtains a perfected lien by serving a citation to discover assets on a third party who may be liable to judgment debtor for money damages). Two sets of challengers stand in

---

[1] We are more precise with the numbers below.

1Knight's way: PMI's attorneys and the independent consultants. More on the consultants in a moment. PMI's attorneys claim that they are owed $84,000 in legal fees from PMI and that these fees must be paid before any money is allocated to Knight. In other words, the attorneys assert that Knight's lien is inferior to their own claim to the LFD judgment. They advance three arguments in favor of this position.

First, PMI's attorneys contend that they too hold a statutory lien in the LFD judgment pursuant to the Illinois Attorneys' Lien Act, 770 ILCS 5/1. A lien arises under this statute only if notice is served by personal service or registered or certified mail on the party against whom the lien is sought. *See* 770 ILCS 5/1; Cazalet v. Cazalet, 54 N.E.2d 61, 63 (Ill. App. 3 Dist. 1944); Unger v. Checker Taxi Co., 174 N.E.2d 219, 222 (Ill. App. 1 Dist. 1961). PMI's attorneys served notice of their lien by regular mail and thus failed to comply with the statute's service requirements. This was a fatal mistake. Illinois courts construe the provisions of the Attorneys' Lien Act strictly and often will strike a lien on a technicality. Indeed, they consistently invalidate liens because of improper service. *See* McKee-Berger-Mansueto, Inc. v. Board of Education of City of Chicago, 691 F.2d 828, 834-35 (7th Cir. 1982); Benvenuto v. Action Marine, Inc., 1993 WL 124777, at *5 (N.D. Ill. Apr. 20, 1993); Williams v. State of Illinios, 1996 WL 1063814, at *3-4 (Ill. Ct. Cl. 1996). Having failed to effectuate proper service, PMI's attorneys do not possess a valid statutory lien in this case.[2]

Second, PMI's attorneys assert an equitable lien in the LFD judgment. "In Illinois, an attorney acquires an equitable lien on a judgment if the agreement between attorney and client makes an equitable assignment of a portion of the recovery, as opposed to a mere promise to pay." Home Federal Savings and Loan Assoc. of Centralia v. Cook, 525 N.E.2d 151, 153 (Ill.

---

[2] Even if PMI's attorneys had achieved proper service, their lien, which was filed on April 20, 2001, would be inferior to Knight's perfected lien of January 16, 2001.

App. 5 Dist. 1988). There need not be an express contract, *see* Lewsader v. Wal-Mart Stores, Inc., 694 N.E.2d 191, 197-198 (Ill. App. 4 Dist. 1998), but there must be an agreement which fixes the attorney's share at a certain percentage of the total recovery such that "the attorney can look directly to the fund for payment of his or her fees." McKee-Berger-Mansueto, 691 F.2d at 836; *see* Lewsader, 694 N.E.2d at 198. PMI's attorneys have not described the nature of their fee agreement with PMI, other than to say that "[b]y agreeing to represent [PMI] an equitable attorney lien was established for any judgment or settlement amount." (PMI's Resp. Br. at ¶ 4). Whatever language may be required to establish an equitable attorneys' lien, this surely is not enough. The attorneys point to no contingency fee arrangement or similar assignment of funds in support of their argument. At best, their assertions amount to the sort of "promise to pay" claim that equity refuses to enforce. *See* McKee-Berger-Mansueto, 691 F.2d at 837; Benvenuto, 1993 WL 124777, at *6; Lewsader, 694 N.E.2d at 198.

Third, PMI's attorneys invoke the "common fund" doctrine.[3] This theory "is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." Baier v. State Farm Ins. Co., 361 N.E.2d 1100, 1102 (Ill. 1977). Illinois courts have construed this doctrine narrowly and, moreover, have refused to apply it to creditor/debtor relationships. *See* Village of Clarendon Hills v. Mulder, 663 N.E.2d 435, 440-41 (Ill. App. 2 Dist.), *appeal denied*, 671 N.E.2d 728 (Ill. 1996); Maynard v. Parker, 369 N.E.2d 352, 354-55 (Ill. App. 3 Dist. 1977), *aff'd*, 387 N.E.2d 298 (Ill. 1979); *see also* McKee-Berger-Mansueto, 691 F.2d at 835 (holding that the doctrine is limited to class actions and insurance

---

[3] PMI's attorneys do not make an express reference to this doctrine (perhaps because they are aware that the doctrine ultimately is not helpful to their cause); rather, they simply allude: "Without the efforts of Plaintiff's attorney, from the filing of the complaint through trial, there would be no judgment for Knight to seek enforcement of its lien." (PMI's Resp. Br. at ¶ 4).

subrogation cases); Benvenuto, 1993 WL 124777, at *7. Knight holds a perfected lien against the LFD judgment and therefore stands in the shoes of a creditor. The common fund doctrine does not operate in these circumstances.

Thus, PMI's attorneys cannot succeed over Knight and its perfected lien interest in the LFD judgment. This does not end the matter, however, as Knight must also defeat the consultants' challenge before it can declare victory. The consultants performed work for PMI on the LFD project. PMI states that it contracted to pay each consultant one-third of any recovery it received from LFD and that it initiated the lawsuit against LFD solely for the purpose of satisfying this contractual obligation to the consultants. Therefore, according to PMI, the LFD judgment should be held in constructive trust for the benefit of the consultants. Even if we were to accept PMI's factual allegations as true, *i.e.*, that it contractually obligated itself to pay one-third of the LFD recovery to each consultant, there is no basis for a constructive trust in this case. Generally, some form or wrongdoing or unjust enrichment is required before a court will impose a constructive trust. *See* Smithberg v. Illinois Municipal Retirement Fund, 735 N.E.2d 560, 565 (Ill. 2000). No such allegations exist here. PMI recovered from LFD on a straightforward breach of contract claim. PMI's obligations to the consultants also arise in contract law. Breach of contract "specifically has been found to not warrant the imposition of a constructive trust." Amendola v. Bayer, 907 F.2d 760, 763 (7th Cir. 1990) (citing cases); Bear Kaufman Realty, Inc. v. SPEC Development, Inc., 645 N.E.2d 244, 250 (Ill. App. 1 Dist. 1994), appeal denied, 652 N.E.2d 338 (Ill. 1995). No party involved in this matter has engaged in "wrongdoing such as actual or constructive fraud, breach of fiduciary duty, duress, coercion, or mistake." Schultz v. Schultz, 696 N.E.2d 1169, 1173 (Ill. App. 2 Dist. 1998). Nor are there any allegations of unjust enrichment. Therefore, constructive trust is not

an appropriate remedy.

Having established the superiority of its rights in the LFD judgment, all that is left is for Knight to determine the exact amount it is entitled to receive. We heretofore have been describing PMI's debt as "approximately $118,000." It is time to be more precise. The Circuit Court of Cook County originally awarded Knight $75,424.76 plus 9 per cent annual interest until satisfaction of the judgment. Thus, as of today, PMI owes Knight $75,424.76 in principal plus $43,277.52 in accumulated interest,[4] for a total of $118,702.28. That portion of the LFD judgment goes to Knight.

## CONCLUSION

For the reasons set forth above, we grant Knight's motion to intervene to enforce its lien interest and order that $118,702.28 of the judgment entered against LFD in this matter be transferred to Knight in satisfaction of the obligation owed to Knight by PMI.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

July 11, 2001.

---

[4] To show our math: $75,424.76 x 9 per cent = $6,788.22 annual interest; accumulating $6,788.22 per year from the date of the original judgment (February 23, 1995) to today (July 10, 2001) makes the interest component $43,277.52.